## McCABE v. BAGBY et al.

### No. 11202.

United States Court of Appeals
Sixth Circuit.

Jan. 31, 1951.

Richard Ford, Detroit, Mich., Richard Ford, David G. Barnett, Detroit, Mich., on

brief; Fischer, Brown, Sprague, Franklin & Ford, Detroit, Mich., of counsel, for appellant.

Paul Franseth, Detroit, Mich., F. A. Carey and Paul Franseth, Detroit, Mich., on brief; Voorhies, Long, Ryan & McNair, Detroit, Mich., of counsel, for appellees.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

In a suit for specific performance of an alleged contract for the making of reciprocal wills by the adoptive parents of the appellant, a decree was sought against the beneficiaries under the will of the surviving parent and the administrator of her estate. The bill sought to enforce a contract by the Kramers to give the appellant a third of their estates. The district judge concluded, after appropriate findings of fact, that the proofs failed, under applicable law, to establish such an agreement, and dismissed the bill. Plaintiff appeals.

Insofar as the evidence is not controverted, challenged as inadmissible or subject to privilege, it shows. that Emil J. Kramer and Emma Kramer, the makers of the alleged contract, had two daughters, Hazel, now the defendant Hazel M. Bagby, and Florence, now deceased. In 1909, Florence married Frank M. White, a lawyer, and from that union the appellant was born in 1912. In 1913 the Whites were divorced by a decree which gave custody of the child to her mother, gave rights of visitation to White and required him to pay alimony. Florence and the child went to live with the Kramers. Trouble arose in respect to the payment of alimony and White's attempts to visit the child. In 1914 Joseph Wheless, a St. Louis lawyer, undertook to negotiate with White as attorney for the Kramers, and after a series of conferences a deed of adoption, prepared by Wheless, was executed and recorded from White to the Kramers. Satisfaction of the alimony judgment was signed and filed and an order was secured from a Missouri court amending the divorce decree so as to permit Florence to resume her former name. The

Kramers brought up and educated the child as one of their own. Kramer had substantial means and from time to time transferred assets to his wife for tax purposes. In 1921 the Kramers simultaneously executed wills, the contents of which are unknown unless they are established by observations of the Kramers to witnesses challenged as inadmissible. On January 14, 1928, April 16, 1932, May 3, 1932 and July 12, 1935, they made new wills, each set drawn by the same scrivener and executed before the same witnesses, but their contents are unknown. On September 7, 1935, the appellant married Terrance W. McCabe. On September 10, 1936, still other wills were made by the Kramers, witnessed by the same bank employees. The contents of these wills are not established unless by evidence assailed as inadmissible. On April 7, 1938, the Kramers added to each of their latest wills a codicil. Each codicil modified the testator's existing will by providing that upon the death of the spouse ⅖ths of the estate should vest in the daughter Hazel Bagby or her children; ⅖ths should be held in trust for the benefit of the adopted daughter Hazel McCabe, with the remainder to her children, and ⅕ths should vest in the daughter Florence, mother of the appellant. Each codicil limited the succession to the daughters' children of the blood. On April 25, 1938, Mr. Kramer added another codicil to his will, which added the bank as one of the executors under it.

On June 18, 1940, complete new wills were prepared for the Kramers, executed at the Mercantile-Commerce Bank & Trust Company at St. Louis, substantially identical in terms, signed by the same witnesses and left at the bank for safekeeping. Kramer's will is of record giving his entire estate to his three daughters in equal portions after the termination of a life estate created for his wife. The will executed by Mrs. Kramer was not produced, but the attorney who had prepared both wills had retained a carbon copy of each on which the names of the witnesses were endorsed, and the copy of Mrs. Kramer's will was introduced as secondary evidence subject to the objections of the defendants.

If admissible, it is substantially identical with the will of Kramer in the disposition of Mrs. Kramer's estate.

Kramer died March 29, 1942. His will was probated by his wife as one of the executors and trustees named therein, and she received the income of his estate for the rest of her life. On April 13, 1942, Mrs. Kramer made still another will which, after leaving cash legacies to the Bagbys, provided that the residue of her estate was to be divided into three equal shares, one for the appellant and one for each of her natural daughters. Thereafter she went from St. Louis to Birmingham, Michigan, to visit Mrs. Bagby. She expected to return but never did, and resided in Birmingham for the rest of her life. On May 29, 1943, Florence Kramer, mother of the appellant, died, leaving her individual estate to the appellant. By a will made July 16, 1943, and a codicil on December 20, 1946, Mrs. Kramer disinherited the plaintiff except for a $1000 legacy. On April 12, 1947, Mrs. Kramer died at the age of 81, leaving an estate of $160,000, or more, exclusive of the Bagby gifts. Admission of her July 16, 1943 will was opposed by the appellant on various grounds, including undue influence, duress and coercion. It was, nevertheless, admitted to probate. On appeal to the Circuit Court the order was sustained and upon appeal to the Supreme Court of Michigan the judgment of the Circuit Court was affirmed. In re Kramer's Estate, 324 Mich. 626, 37 N.W.2d 564.

The appellant contends, first, that there was an agreement between the Kramers and White at the time of her adoption in December, 1914, that the Kramers would execute mutual reciprocal wills making her an heir to each of their respective estates, and second, that if no contract was proved by the adoption agreement or the contemporary oral negotiation between White and Wheless, there is sufficient evidence of a mutual agreement by occurrences after the adoption in 1914, namely, the successive wills simultaneously made by the Kramers through the course of years, observations by the Kramers to witnesses and the substantially identical wills made by both Kramer and his wife in 1940, providing for equal distribution of their respective estates to their three daughters. The appellant also seeks to subject their *inter vivos* gifts to the defendants to their obligations under the contract.

In support of the view that at the time of the adoption in 1914 an oral agreement was made between the Kramers, represented by Wheless, and White for the making of reciprocal and irrevocable wills by both of the adoptive parents, White testified that Wheless had represented the Kramers in negotiations with him, that he had informed Wheless that White's mother had considerable property and would be willing to undertake the adoption of the child and secure her absolutely as to her future, making provision for her equally with her own children that after this information Wheless came back from a conference with his clients and said they would enter into an agreement "which would provide for the money matters discussed by us." He said they would provide in their wills so that the child would receive in the distribution of their property "an undivided one-third of their property equal to each share of their natural children." The testimony of Wheless, whose deposition was taken, was not altogether corroborative. He agreed that White wanted his daughter treated on an equal footing with the other daughters of the Kramers, but asserted repeatedly that the adoption agreement reflected their wishes and embodied and expressed their full purpose. It was evidently his impression that the language of the adoption agreement which recited that the Kramers had "adopted and by these presents do adopt, the said Hazel Elizabeth White, as and for their child and heir, as fully as they are by law empowered to do," was the equivalent of an undertaking that the appellant would share equally in their estates. So strong was this impression that he had recourse to the Shakespearean quotation "It is so nominated in the bond."

Whether an oral agreement was made in 1914 between the Kramers for mutual reciprocal and irrevocable wills in the pleaded terms, whether the contract is evidenced by the wills made in 1940, or by the observations made by the Kramers

from time to time, must be determined by the law of Missouri where all of the wills were executed and where substantially all of the commentary on their purpose or content was made. Speaking of irrevocability in Wanger v. Marr et al., 257 Mo. 482, 165 S.W. 1027, 1029, the Supreme Court of that state observed, "Revocability is one of the distinctive characteristics of wills. It is necessary to inquire as to the quantum of evidence essential to establish a contract or agreement of such character as to warrant a court of equity in granting relief like that sought in this case. Specific performance in this case must be decreed, if at all, upon the theory that there was an agreement not expressed in the wills themselves and inconsistent with their nature as wills and of such character as to transform that which, on its face, is a will into an irrevocable compact. On principle, the usual rule applied in other cases in which it is sought to specifically enforce an oral contract in the face of a writing covering the same subject-matter and inconsistent with such contract ought to govern in weighing the evidence in this case." The court then approved the rule in New York as announced in Edson v. Parsons, 155 N.Y. 555, 568, 50 N.E. 265, 268, wherein the court said, "A general maxim which equity recognizes is that a testator's will is ambulatory until his death. It is a disposition of property which neither can nor is supposed to take effect until after death. I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof." And again, "The fact that wills were made on the same day and that in each the maker of the other was given a like estate in the property devised is evidence of concert of action, but not sufficient to prove the existence of a binding contract." In In re Estate of Opel, 352 Mo. 592, 179 S.W.2d 1, 4, it was said, "So far as we can find, every opinion on the subject adopted by an appellate court of this state has required a very high degree of proof to establish an oral contract to execute mutual wills or to execute a will in a particular way. * * * Such oral contract must be definite; proven as pleaded; cannot be established by loose or casual conversations; must be fair and the proof leave no reasonable doubt that the contract as pleaded was in fact made and has been performed by the party relying on the contract or the one through whom he claims." In Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910, 915, it was said, "A general maxim which equity recognizes is that a testator's will is ambulatory until his death. It is a disposition of property which neither can nor is supposed to take effect until after death." Although in that case the evidence was found to be sufficient to establish the agreement, the rationalization was in accord with that in the Opel case. Finally, in Shaw v. Hamilton, 346 Mo. 366, 141 S.W.2d 817, 822, the Missouri Court made an exhaustive analysis of Missouri law and reached the conclusion that, "(1) The alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, * * * (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had." Quoting from Norton v. Norton, Mo.Sup., 43 S.W. 2d 1024 and Keller v. Lewis County, 345 Mo. 536, 134 S.W.2d 48, the court observed, "No relief may be granted upon the basis of an oral contract, such as is here sought to be enforced, except where the proof of the oral contract, its terms, character and the part performance thereof, is so clear, cogent, positive and convincing as to leave no reasonable doubt in the mind of the chancellor."

■ The appellant contends that the Missouri rule as to the quantum of evidence necessary to establish an oral contract to execute reciprocal wills, is not applicable to a case tried in Michigan. We are unable to agree. It is conceded that if there was an oral contract between the Kramers and White, or between the Kramers themselves, that appellant was to receive at the death of the Kramers ⅓ of their combined estate, it must be determined by Missouri law. To establish such contract does not involve merely an evidentiary fact but goes to the very existence of the right of action itself. There was either an enforceable Missouri contract or no contract at all. In any event, the rule in Michigan in respect to evidence sufficient to establish such contract does not differ materially from the rule in Missouri. Eicholtz v. Grunewald, 313 Mich. 666, 678, 21 N.W.2d 914. There the court cited with approval Kerns v. Kerns, 303 Mich. 23, 5 N.W.2d 552, 554, where the court said, "* * * the nature of the litigation is such as to require courts to scrutinize the testimony closely and to weigh it and test it in the light of all circumstances disclosed by the record since estates of deceased persons should not be diverted in consequence of such agreements except upon proof which satisfies the mind and conscience of the court that the contract was made as claimed", and cites the case of Elmer v. Elmer, 271 Mich. 517, 518, 260 N.W. 759, where the court said, "* * * evidence, consisting of expressions of intention of each parent to leave it to him, made before simultaneous execution of their wills *held,* insufficient to sustain his burden of proof that there was an agreement between the parents that neither would change the will without the consent of the other."

■ The district court found that the Kramers did not, at the time of plaintiff's adoption, agree either orally or in writing to provide a distribution upon their death, of the property or estates of either or both of them equally among the three children. That this finding is supported by evidence and is not clearly erroneous, must be our conclusion from a careful consideration of the record. Wheless had testified that the entire agreement made at the time between the Kramers and White was incorporated in the deed of adoption. No such agreement is there to be found. The reference to the adopted child as an heir does not constitute an obligation to provide for her by an equal distribution of the estates of the Kramers, and to the extent that it imposes any obligation, it has been fully complied with. As to there being a concurrent oral agreement in more precise terms, the court heard and saw White, had a right to consider the interest White might have in the outcome of the litigation as the father of the appellant, that he was himself a lawyer, that he undertook to testify to conversations held 34 years preceding the giving of his evidence, which is in conflict with the repeated statements of Wheless that the whole agreement was incorporated in the deed of adoption, and the fact that the first wills made simultaneously by the Kramers, whatever their terms, were not executed until 1921, seven years after the negotiations which led to the adoption. The district judge did not rule upon the competency of White's evidence, and we find no occasion to do so.

The evidence upon which the appellant relies for her contention that an oral contract derives from the making of many simultaneous wills between 1921 and 1938, the terms of the Kramer wills executed in 1940, if both were admissible, certain observations claimed to have been made by Mrs. Kramer at various times between 1921 and 1937, and a single observation of Mr. Kramer sometime in 1936 or 1937, has been carefully considered. It must be observed, however, that only one of these alleged observations speaks inferentially in terms of an agreement, and that is the statement of Mrs. Kramer to Madalene McCabe, "We have always made arrangements that the three girls should be treated equally as to what we leave when E. J. and I pass away." But we are obliged to consider that none of Mrs. Kramer's statements were made in the presence of her husband, and that the sole remark of Kramer appearing in the record makes no reference to an equal division of the Kramer estates.

The appellant points to the numerous Kramer wills, each made concurrently with the other, drawn by the same scrivener, witnessed by the same persons, as showing a concerted action on the part of the Kramers in respect to the disposition of their estates. Perhaps so. But this tells us nothing as to the nature of the disposition. When we consider that the ultimate disposition of their estates was the most important element in each will and that they executed numerous wills and codicils during the years, it is as reasonable to infer repeated changes of mind in this respect as to infer continued identical testamentary purpose, and a choice of equally reasonable inferences does not usually sustain the burden of proof. We do know from the record, that on April 7, 1938, they added codicils to concurrent wills made in 1936, by which codicils it was provided that ⅗ths of each estate should be held in trust for the benefit of the appellant, and ⅖ths should vest in her mother, Florence, with each codicil limiting the succession to the daughters' children of the blood. This is not in recognition of a contractual obligation to treat each daughter equally.

We come, then, to the 1940 wills. Passing the question whether Mrs. Kramer's will on that date was properly proved by secondary evidence, we find the terms of these wills relied upon to prove a prior agreement between the Kramers, now made irrevocable by the death of Kramer and the acceptance of benefits under his will by Mrs. Kramer. Having in mind that to satisfy the statute of frauds and the principles of equity under Missouri law, an oral contract, to be enforced, must be definite and certain in its terms, we give consideration to these Kramer wills in search for the terms of the specific contract herein pleaded and sought to be proved. That contract is alleged to have for its purpose the distribution at death of the Kramer estates equally among their two natural daughters and their adopted daughter. No other contract is asserted. The Kramer wills, however, whatever the intention of the testators, do not provide for such equal distribution. When they were executed Florence, mother of the appellant, was living with the appellant, her sole natural and statutory heir. Kramer died in 1942 and Florence lived till some time in 1943. Had the Kramers died subsequent to the execution of their 1940 wills and prior to the death of Florence, the appellant would have inherited not ⅓ of their estate, but, ultimately, ⅔rds of their estate, her own share and that of her mother. Had Florence died before the death of both of the Kramers, in which case it was provided in each of the wills that her share of the estate would be divided between the appellant and the defendant Bagby, the appellant would have inherited not ⅓ of the Kramer's estates but ½ of their estates. If answer is made that these contingencies are speculative then it must be observed that we are probing the minds of the Kramers as to a sense of contractual obligation in 1940. Florence Kramer undoubtedly had a life expectancy far greater than that of her parents, and whether there was a contract as alleged between the Kramers as to the division of their property, it is not evidenced by the 1940 wills. It may also be argued that it imports no invalidity to a contract for equal disposition to provide more than was agreed upon, on the theory that the greater includes the lesser. We are dealing, however, not with a contract whose terms have been established, but are considering whether a contract was made at all, and the 1940 wills, whatever they show, lend no aid to proof of the contract here pleaded and relied upon, and give no certainty or definiteness to its terms. Finally, it may be urged that Florence might possibly remarry and have issue, in which case the appellant would not remain her sole natural heir. But Florence was divorced in 1913, and was still not remarried 27 years later. It is not a reasonable inference that possibility of her remarriage was in the minds of the testators.

Moreover, the record here shows that Kramer's will was admitted to probate, that the appellant received her ⅓ share in her adoptive father's estate, that her mother Florence had received very substantial gifts from her parents, and that all of these assets passed to the appellant as her daughter. Whatever the intention of the Kram-

ers may have been there is no aspect of unfairness or niggardliness on their part in insuring the future of their adopted daughter, to quicken the conscience of the chancellor. Rather is the reverse true. The appellant received substantial gifts from her adoptive parents. Her mother was the recipient of numerous shares of stock in sound companies, together with government bonds and some real estate, to all of which she fell heir. There is some evidence in the record that her mother's estate was worth $150,000. She herself received ⅓ of Kramer's $70,000 estate by the terms of his 1940 will. She now seeks a share of Mrs. Kramer's estate of $160,000, together with a share of gifts made by Mrs. Kramer to Mrs. Bagby and her husband. The overtones of undue influence and coercion by Mrs. Bagby over her mother in appellant's brief, do not impress us, for three Michigan courts rejected her contentions in that respect. She sought to prove a contract, the terms of which are neither definite nor precise, not clearly proved by casual observations made after the lapse of years. We perceive no findings of the district judge that upon this record are clearly erroneous, in consequence of which

The decree below is affirmed.