S. E. DRAKE ET AL. v. AUGUSTA DRAKE ET AL., Appellants.—43 S. W. (2d) 556.

Court en Banc, November 17, 1931.

*Judson, Green, Henry & Remmers* for appellants.

*Grant & Grant, R. A. Mooneyham* and *R. E. L. Marrs* for respondents.

FRANK, J.—Action to partition real estate located in the city of St. Louis, Missouri. On March 18, 1922, one James G. Drake died seized of the land in question and left surviving him his widow, Augusta Drake, and certain collateral kindred. The widow was made a defendant in the action. The other defendants together with the plaintiffs constitute the collateral heirs of deceased. The deceased had no children of his own blood. His widow has four children of a former marriage: three daughters and one son. The son, by guardian, intervened in this action under the name of Arnold Drake, alleging that he was the adopted son of James G. Drake, deceased, and praying that his status as such adopted son be established, or in lieu thereof specific performance of deceased's oral contract to adopt him be decreed and that he be declared to be the owner in fee of the property in question, subject to the rights of the widow, Augusta Drake, and that deceased's collateral kindred be precluded from claiming any interest therein. The decree denied intervener's claim of adoption, dismissed his intervening petition, ordered partition and sale of the property as prayed in the petition and required that the widow, Augusta Drake, account for the rental of the property and for certain personal property received by her as administratrix of the estate. Intervener and the widow appealed.

Plaintiff's petition was in conventional form and sought partition of the property among Augusta Drake, widow of deceased, and his collateral heirs. All defendants except the widow and certain minor defendants, who were represented by guardian, filed answers admitting the allegations of plaintiffs' petition and joining in the prayer for partition. The minor defendants, through their guardian, affirmed their interest in the property, alleged their lack of knowledge of the facts and asked that plaintiffs be required to make strict proof. The widow, Augusta Drake, answered admitting the death of James G. Drake, and his ownership of the property, claimed one-half interest in the property as his widow, and denied generally other allegations in the petition.

The intervening petition of Arnold Drake admitted the death of James G. Drake and his ownership of the property at the date of his death; admitted that his widow, Augusta Drake, was entitled to a one-half interest in the property and denied generally other allegations of the petition. Intervener makes the following further allegations:

"Further answering, and by way of cross-bill, this defendant states that he is the owner in fee of the property herein, subject to the rights of his mother, Augusta Drake, he being the adopted son of the said James G. Drake, and alleges that prior to his death, March 18, 1922, the said James G. Drake was married to this defendant's mother in the city of Edwardsville, State of Illinois, on the . . . day of December, 1913, at which time this defendant was an infant of tender years; that the said James G. Drake had no children; that shortly after the said marriage James G. Drake agreed to adopt this defendant as his son and to make him his heir; . . ."

The petition concludes by pleading the facts and circumstances under which intervener lived in James G. Drake's home. To avoid repetition, we will not reproduce these allegations of the petition because the same facts will be stated in our review of the evidence. These facts are fairly stated by appellants as follows:

"There was no conflict whatever in the testimony relating to the question of adoption. In substance, it showed that James G. Drake married Augusta Struber, a widow, about 1913; that she had three daughters and one son, Arnold, who was at the time of the marriage about five years old. Drake had no children. Very soon after the marriage he became known as Arnold Drake. The girls continued to be known by their own names. A grammar school certificate, dated 1916-17, when the boy was eight years old, and signed by the school principal, bore the name Arnold Drake. James G. Drake joined the Patrons' Association of Chouteau grade school, a fathers' club (the mother having a separate club), as the father of Arnold Drake. He entered Arnold in the bugle corps as Arnold Drake. Arnold was graduated in 1921, his graduation certificate bearing the name Arnold Drake. When Arnold was eleven years old James Drake brought home a small booklet with the name Arnold Drake printed on it. It was a book of baseball tickets, known as 'Knothole Gang' tickets."

All the witnesses testified that the boy was known by the name of Arnold Drake; that shortly after Drake's marriage, and until his death, Arnold called Mr. Drake "pap" or "papa," and Mr. Drake always referred to him as "my boy" or "my son." Three witnesses testified that Drake was like a father to him, and was very proud of him. He told one witness that Mrs. Drake could do with the girls as she liked, but with Arnold, "I am going to do what I want."

Dr. Hodges, who became the family physician about four years prior to Drake's death, and who had known the boy and visited in the family, testified that Drake and Arnold referred to each other as papa and son, and that the relationship between them was such that he thought Arnold was Drake's own son, and never knew until after Drake's death that Arnold was not his own son.

All witnesses testified to the great affection between them; that Arnold was obedient to Mr. Drake, brought lunch to him at the barber shop, especially when school was not in session; that Drake supported him and provided his education and recreation.

Three witnesses—Drake's closest friends—testified that Drake told them many times that he was going to adopt Arnold. He asked one witness shortly after the marriage, and another somewhat later, how to go about doing so. One witness, who associated with Drake after his marriage, but who moved away some time prior to Drake's death, testified that he joked Drake about Arnold being his boy, and he replied, "Well, some day he will be my boy." When Arnold was about eleven years old, one day at the dinner table he made this remark, "Pop, when are you going to adopt me?" To which Drake replied, rather jokingly, "Wait till I see what kind of a boy you turn out to be." That he turned out to Drake's satisfaction was affirmed by all the witnesses. Mrs. Drake testified that there had always been a general understanding between Arnold and Mr. Drake that Arnold was to be adopted.

Article I of Chapter II, Revised Statutes of Missouri, 1919, provides for the adoption of children by decree of the juvenile division of the circuit court of the county in which the person sought to be adopted resides, and prescribes the procedure necessary to obtain such a decree. This statute became effective in June, 1917. Respondents contend that this statutory method of adoption is preclusive and for that reason the alleged adoption in this case was not in fact an adoption because not procured by decree of court as provided by statute.

Prior to the enactment of this statute, the statutory method of adoption was by deed. Before the enactment of our present statute and during the period when the statute providing for adoption by deed was in effect, we held in many cases that a court of equity, in a proper case, was authorized to decree an adoption although no attempt had been made to comply with the statute authorizing adoption by deed. The reason for so holding was stated by us in Lynn v. Hockaday, 162 Mo. 111, 125, 61 S. W. 885, as follows:

"The main argument in resistance to the claim of adoption, is that the agreement relied on is within the Statute of Frauds, and there being no deed of adoption, the claim fails. The agreement is not, strictly speaking, within the Statute of Frauds; that is, it

is not embraced within the provisions of the ancient Statute of Frauds. [Browne on Stat. Frauds, sec. 275-276a; Rodgers on Domestic Rel., sec. 459.] Yet it bears a resemblance to cases within that statute, for the reason that the statute authorizing the adopting of a child provides that it may be done by deed in writing, and indicates no other method. And as there was no common law adoption the argument is that it must be done as the statute requires, or it cannot be done at all. But since the statute has made the adoption of a child lawful, the law, for the same reasons that it sometimes enforces oral contracts affecting real estate, will not allow the mere failure of one party to do his duty to work an irreparable wrong to one who has fully performed his part. This court, for that reason, has not only held an oral contract for adoption valid, but has also required fulfillment of a collateral agreement of the adopting parent, to leave the adopted child his estate at his death. [Sharkey v. McDermott, 91 Mo. 647.]"

Other cases to the same effect are: Fisher v. Davidson, 271 Mo. 195, 195 S. W. 1024; Baker v. Payne, 198 S. W. 75; Signaigo v. Signaigo, 205 S. W. 28; Craddock v. Jackson, 223 S. W. 924; Remmers v. Remmers, 239 S. W. 509; McCrary v. McCrary, 239 S. W. 848; Holloway v. Jones, 246 S. W. 587; Kay v. Niehaus, 298 Mo. 201, 249 S. W. 625.

If, as we have seen, the former statute which authorized an adoption by deed, did not preclude a court of equity, in a proper case, from decreeing specific performance of an oral contract to adopt, no valid reason exists why the present statute which authorizes an adoption by a judgment of the juvenile division of the circuit court should do so. Both statutes authorize an adoption in a specified manner, but neither contains a prohibition against a court of equity taking the necessary steps to protect the interest of a child in a case where one has expressly agreed to adopt the child or by his acts and conduct has placed himself in a position where it would be inequitable to permit him to assert that the child was not adopted. We therefore conclude that the present statute which authorizes an adoption by a decree of the circuit court does not oust a court of equity of its jurisdiction to award a child the rights incident to a relation of adoption, in a case where the facts warrant such action, although the statutory method of adoption had not been observed. . We reach this conclusion by construing the statutes of adoption in a light most favorable to the child. The expressed intention of the Legislature in enacting the statute was the welfare of the child. [Sec. 14078, R. S. 1929.] It is true that Section 14074, Revised Statutes 1929, of the adoption statutes, provides that the approval of the court shall be requisite in all cases, such approval being given or withheld as the welfare of the child or person sought to be adopt-

ed may, in the opinion of the court, demand. It is also true that Section 14083 of the same statute makes it a misdemeanor punishable by a fine or imprisonment or both, to transfer or receive the control and custody of a child without the approval of the juvenile court, but none of these statutes indicate a legislative intent to prevent a court of equity from decreeing the rights incident to the statutory relation of adoption in a case where the facts warrant such action. It will be noted that the statute does not make the child guilty of a crime. It penalizes the parties who deal with the child without permission and approval of the juvenile court. If one should take possession, custody and control of a child without the approval of the juvenile court, and the natural parents or lawful guardian of the child would question such party's right to the custody and control of the child because of non-compliance with the statutes of adoption, a different question would be presented. But where one takes a child into his home as his own, receives the love, affection, companionship and service of the child to aid and cheer him along the pathway of life and to comfort him in the declining years of his childless old age, after this death, it would be inequitable and unfair to permit his kindred, who stand in his shoes, to say to the child you have no right incident to the status of parent and child because deceased violated the law in entering into such a status without the approval of the juvenile court. To so hold would be to permit guilty parties to take advantage of their own wrong. The provision of the statute which penalizes parties for giving or receiving custody and control of a child without approval of the juvenile court, is for the protection of the welfare of the child. The fact that the statute gives the child this protection does not take from it any protection which a court of equity was authorized to give it prior to the passage of the statute.

The equity rule is well stated in Holloway v. Jones, 246 S. W. 587, 591:

"Equity follows the law except in those matters which entitle the party to equitable relief, although the strict rule of law be to the contrary. It is at this point that their paths diverge. As the archer bends his bow that he may send the arrow straight to the mark, so equity bends the letter of the law to accomplish the object of its enactment. In all the cases to which we have referred supra, and in numerous others, this court has consistently held that he who has taken possession of a child in the capacity of an adopting parent cannot escape the duties and liabilities incident to that capacity by failing to follow the forms that the statute has prescribed to that end."

Respondents cite the case of Rochford v. Bailey, 322 Mo. 1155, 17 S. W. (2d) 941, in support of the contention that the statutory

method of adoption is preclusive. The questions considered in the instant case were not considered or determined in the Rochford case. That was a *habeas corpus* proceeding brought by Vida Brisby Rochford against Floyd F. Bailey and wife for the custody of petitioner's minor son. The defense was that by a decree of the juvenile division of the Circuit Court of Jackson County, Bailey and his wife had legally adopted the child and were therefore entitled to its custody. The holding in that case was that the statutory procedural steps necessary to give jurisdiction had not been taken and for that reason the decree of adoption was void because rendered without jurisdiction. In course of the opinion in that case, it was said: "The statute (secs. 1095-1103, R. S. 1919) comprehends within itself a complete scheme for the adoption of children; it is a code within itself." Respondents construe this statement as a holding that a court of equity has no authority to award a child the rights incident to the relation of adoption, unless it be shown that such child was adopted in the form and manner provided by statutes. Respondents entirely misconstrue the holding of the court in that case. The court was considering the validity of a decree of adoption, and held that the validity of such a decree depended upon a substantial compliance with the statutes pursuant to which it was rendered. The court neither considered nor determined what the rights of a child would be under circumstances similar to those in the instant case. We are satisfied with the law as declared in the Rochford case, but it has no application to the facts of this case.

The questions for consideration in this case are (1) whether or not a court of equity, in a proper case, has jurisdiction to decree specific performance of an oral contract to adopt, and (2) if a court of equity, in view of our present statutes of adoption, has such jurisdiction, do the pleadings and evidence warrant a decree awarding to intervener Arnold Drake, the rights of an adopted child? If so, the decree denying him such right must be reversed. Otherwise, not.

We have already determined that a court of equity has jurisdiction to award such relief. We will next consider whether the pleadings and evidence entitle Arnold Drake to the relief asked for in his intervening petition. He first alleged that James G. Drake agreed to adopt him and make him his heir, then averred the facts and circumstances showing the conditions under which he lived in James G. Drake's home, Drake's treatment of him, his treatment of Drake and the relationship existing between them. The petition asks that intervener's status as an adopted child of James G. Drake be decreed, or in lieu thereof, specific performance of the oral contract to adopt be adjudged. The sufficiency of the intervening petition is not challenged. The only claim made is, that in view

of the existing statutes of adoption, intervener is not entitled to the rights incident to the relation of adoption, because he was not a-dopted in the form and manner provided by statute. Having ruled this contention against respondents, it leaves the petition unchallenged in other respects. We regard the petition as sufficient to entitle intervener to the relief prayed for therein.

The evidence in support of intervener's claim must be measured by the well recognized doctrine that to sustain such a claim the evidence must be clear, cogent and convincing and of such a character as to leave no reasonable doubt in the mind of the chancellor. It has been said that "on account of the momentous consequences which result from allowing oral evidence to create an heir to a man's property, the courts in this State have uniformly set a guard over uncertain memory and protection against willful falsehood by requiring the proof to be cogent and overwhelming, without substantial ground for reasonable doubt." [Baker v. Payne, 198 S. W. 75, 76; Wales v. Holden, 209 Mo. 552, 558, 108 S. W. 89; Rosenwald v. Middlebrook, 188 Mo. 58, 89, 68 S. W. 200.]

While the evidence necessary to establish a contract or agreement to adopt must be of the character defined in the foregoing rule, it is not indispensable that the making of the contract be shown by direct evidence. Such fact may be shown by the acts, conduct and admissions of the adopting parents. [Kay v. Niehaus, 249 S. W. 625, 626, and cases cited.] "If the statements and conduct of the adopting parents are such as to furnish clear and satisfactory proof that an agreement of adoption must have existed, then the agreement may be found as an inference from that evidence." [Roberts v. Roberts, 223 Fed. 776, 138 C. C. A. 103; Kay v. Niehaus, supra.] Under such circumstances it would be inequitable to permit the adopting parents or those claiming under them to assert that the contract of adoption was not made in the manner provided by law. Viewing the evidence in the light of the foregoing rule, we regard it as sufficient to support intervener's claim.

James G. Drake married Augusta Struber, a widow, in 1913. She had four children, three daughters and a son, Arnold, who was five years old at that time. Drake had no children. After the marriage, these children lived in James G. Drake's home. We have heretofore set out the evidence. Without restating it, we will call attention to the facts which convince us that Drake voluntarily assumed the relation of parent toward the boy, Arnold, and regarded him as his adopted son. The difference between his attitude toward Arnold and the other step-children indicates that he regarded the boy as his own child. The three girls kept their own names. The boy was given the name Arnold Drake. He was entered in the public schools and in all school activities as Arnold Drake and was so known by

his associates. James G. Drake joined the Patrons' Association of the school as the father of Arnold Drake. Arnold called Mr. Drake "papa" and Mr. Drake called Arnold "my boy" or "my son." Drake told his closest friends that he intended to adopt the boy. One witness testified that Drake told him he was going to make something good out of the boy. He further testified that Drake said, "My wife, she can do with the girls what she wants, but that boy, I am going to do what I want." This witness also testified that Drake did not refer to the girls as his girls. Mrs. Drake testified that there was always an understanding between Drake and Arnold that Arnold was to be adopted.* The family physician who was frequently in the Drake home, testified that the relationship between Drake and the boy was such that he always thought the boy was Drake's own son. The evidence shows that there was great affection between them. Drake treated the boy as his own son, furnished him support, education and recreation, and in return received from the boy love, affection, companionship, obedience and service.

Respondents claim, in effect, that because of Drake's marriage to the boy's mother, it was but natural for him to take the boy into his home and provide for him, and that such acts of kindness evinced no intention on his part to adopt the boy. Such facts, standing alone, would not be sufficient to establish the relation of parent and child, but other facts and circumstances in the case—Drake's treatment of the boy, the boy's treatment of him, his attitude toward his other step-children, his statement that Mrs. Drake could do as she liked with the girls, but with Arnold, "I am going to do what I want," his expressed intention to adopt the boy and make something good out of him, giving the boy his name, the girls keeping their own name and other facts and circumstances to which we have heretofore called attention—convince us that Drake agreed to adopt the boy, regarded him as his own child, and in turn received from him the benefits ordinarily incident to such a relation. In this situation, it would be inequitable to permit anyone to assert that Drake did not adopt the boy in the manner provided by law.

For the reasons stated, the decree of the circuit court is reversed and cause remanded with directions to said court to set aside its decree heretofore entered and enter a decree adjudging Arnold Drake to be the adopted son of James G. Drake, deceased, subject to the rights of Augusta Drake, widow of said James G. Drake, deceased, and precluding all other parties to this action from hereafter claiming any interest therein. *Atwood, C. J.,* and *Gantt, Ellison* and *Henwood, JJ.,* concur; *Henwood, J.,* in the result only; *White* and *Ragland, JJ.,* dissent, the latter in a separate opinion.

RAGLAND, J. (dissenting)—In this State the power to create artificially the *status* of parent and child, to which the law will

attach the same incidents, rights, privileges, duties and obligations it attaches to the *status* growing out of the natural relation, does not exist in the absence of an express statute conferring it. This, because "adoption" was unknown to the common law. For nearly a hundred years there was a statute in force in this State which provided that any person might adopt any child,. as his or her heir, by deed duly acknowledged and recorded; and that the child so adopted should have and enjoy all the rights and privileges as against the person executing the deed of adoption, as a child has by law against the lawful parents. [Secs. 1671, 1673, R. S. 1909.] There have been a number of cases in which this court has approved decrees in equity decreeing the *status* of parent and child through adoption. But in every instance the decision, in its final analysis, was bottomed on the existence of the statute just referred to. Two cases will illustrate: Lynn v. Hockaday, 162 Mo. 111, and Holloway v. Jones, 246 S. W. 587. In the first (p. 125), it is said:

"And as there was no common law adoption the argument is that it must be done as the statute requires, or it cannot be done at all. But since *the statute has made the adoption of a child lawful*, the law, for the same reasons that it sometimes enforces oral contracts affecting real estate, will not allow the mere failure of one party to do his duty to work an irreparable wrong to one who has fully performed his part."

In the second (p. 590):

"While with us it is a *statutory right*, it is not to be considered as an infringement upon the natural rights of individuals, but must be regarded, like the statutes which regulate the distribution of the estates of individuals, as a declaration of governmental policy in a matter of purely legislative cognizance, to be construed with reference to the intention, object, and purpose of the Legislature.

"For the purposes of this case it matters little whether we regard the act of adoption as a status voluntarily assumed with the parental duties and burdens implied by *the statute* with the corresponding benefits inuring to the adopted child (R. S. 1899, Sec. 5248), or as a contract of which the child is the beneficiary."

These cases could not have been written as they were had there been no statute conferring upon individuals the right to adopt children by deed or contract. And so with all the other cases cited in the majority opinion, the decisions in which are based, it is said, on equitable principles. They all assume, in view of the statute, the competency of the alleged adoptive parent to create by contract the status of parent and child. But in 1917 (Laws 1917, p. 193) the Legislature repealed outright the adoption statute above referred to and in lieu of it enacted one providing for the adoption of children through and by means of an elaborate judicial proceeding.

In so doing it withdrew from the realm of contract the creation of the status of parent and child. The majority opinion affirms that this action on the part of the Legislature is without significance and that courts of equity can, and will, still enforce contracts, or quasi-contracts, for adoption.

What has been said is with reference to the legal status of parent and child, from which flows, among others, the right of inheritance. This cannot now be created by contract in this State. Contracts attempting to create such status should not be confused with contracts wherein one person, upon a valuable consideration, agrees that upon his death his property shall go to another as though his heir, or that he will his property to such other. Contracts of this latter character can of course be enforced on common law principles. [Gupton v. Gupton, 47 Mo. 403.] It has been held that, though a contract wherein the proposed adoptive parent agreed that if the child would render to him all the duties of a child to its natural parents he would adopt the child and make him his heir was void as a *contract to adopt*, because not authorized by statute or because the authorizing statute was not substantially complied with, yet it was valid and enforceable to the extent that it dealt with the disposition of property. [Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107; Healey v. Simpson, 113 Mo. 340, 20 S. W. 881; Chehak v. Battles, 183 Iowa, 107; Webb v. McIntosh, 159 N. W. (Ia.) 637; In re Darling's Estate, 159 Pac. (Calif.) 606.] In the case at bar there was some evidence tending to show that Drake promised to adopt the boy Arnold, but not an iota (in so far as the principal opinion discloses) that he promised to make him his heir. It might be suggested that the parties understood and intended that adoption should include the right of inheritance, but certainly such a term cannot be implied in a contract where there is no attempt to comply with some statute which makes heirship a consequence of adoption. For adoption does not confer on the child any right of inheritance unless expressly so provided in the statute authorizing it. [Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585; In re Darling's Estate, supra.]

Where one upon a valuable consideration agrees that if he dies intestate his property shall go to another, the latter takes under the *contract* and not by *inheritance*. The right to take property by descent is a creation of the law. [Carroll's Estate, 219 Pa. St. 440.] In this State the right is created by our Statute of Descents and Distributions. With respect to that statute, it is said in Hockaday v. Lynn, pp. 466-7, that, barring the one incident of husband and wife's rights by marriage, it is built on, and around, the idea of blood relation, and that consanguinity is so fundamental in the statute that it may only be ignored by construction where courts

are forced to do so, either by the terms of express statute or by inexorable implication. There is but one instance where our statute law, other than the single exception found in the Statute of Descents and Distributions heretofore noted, ignores consanguinity in creating the right to inherit. That is the present statute of adoption. It provides:

"When a child is adopted *in accordance with the provisions of this article*, . . . said . . . child shall be capable of inheriting of said parents as fully as though born to them in lawful wedlock."

Arnold Drake was not a blood relative of James G. Drake, nor was he ever adopted by James G. Drake in accordance with the provisions of the statute: it follows that he could not *inherit* the latter's property.

As the alleged oral contract made no reference to the disposition of James G. Drake's lands or other property at his death, and as Arnold Drake could not inherit from him, it is clear that the latter has no title to the land sought to be partitioned in this proceeding.

For the reasons herein set forth I am unable to give my concurrence to the majority opinion. *White, J.,* concurs in these views.