**Rosealle M. LONG, formerly known as Rose Marie Daggett, Appellant,**

v.

**W. A. WILLEY, Administrator of the Estate of William Leland Daggett, deceased, and W. A. Willey, Administrator de bonis non of the Estate of William H. Daggett, Respondents.**

No. 50581.

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

302

Robert Stemmons, Mt. Vernon, for appellant.

Pinnell & Monroe, by W. H. Pinnell, Monett, for respondents.

STOCKARD, Commissioner.

■ Plaintiff has appealed from an adverse judgment in her suit in equity in which she seeks a decree that she is the adopted daughter of William H. Daggett who died intestate owning real estate in Lawrence County, Missouri. Title to real estate is involved, Hogane v. Ottersbach, Mo., 269 S.W.2d 9, and jurisdiction is in this court.

Plaintiff was born Rosealie M. McNeece on January 6, 1926, at St. Joseph, Missouri, one of eight children of William Guy McNeece and Ethel McNeece. Plaintiff's mother died September 30, 1930. Her father took two of the older boys with him to Colorado, two children were placed in a home in Nevada, Missouri, and the other children were placed with relatives. Plaintiff, four years of age, was taken into the home of her uncle and aunt, James L. and Eula McNeece, who then lived in Iowa. A few months later Mr. and Mrs. McNeece moved to Northern Heights, Missouri, near Kansas City and took plaintiff with them. Financial difficulties, resulting from the depression, caused Mrs. McNeece to apply for welfare assistance, but, she testified, "because she [plaintiff] was not our own child, they would not let us have assistance of any kind." William Harry and Nell Daggett, "good friends" of plaintiff's uncle and aunt, had one child, a son named William Leland, and several years prior to the time Mr. and Mrs. McNeece obtained plaintiff, Mrs. Daggett had expressed the desire to adopt a little girl. However, according to Mrs. McNeece, Mrs. Daggett had said that "they want us to take a little boy * * * but they will not let us have a little girl, and that is what we want." We assume that the use of "they" was a reference to the juvenile authorities. Mrs.

McNeece further testified that after she and her husband had plaintiff about two years, Mr. and Mrs. Daggett "said they would like to have her [plaintiff] and raise her as their daughter, as their child, that is, if her father would consent to it," and that Mrs. Daggett said that she and her husband "would like to adopt her [plaintiff] if Guy [plaintiff's father] will sign the adoption papers." Mrs. McNeece testified further that she wrote to plaintiff's father and "told him about the circumstances, and also told him that the Daggetts wanted a child, and that they could give her a good home." Plaintiff's father replied, but Mrs. McNeece was not permitted to relate his answer. Following this exchange of letters plaintiff was taken by Mr. and Mrs. Daggett into their home, with the consent of her uncle and aunt, where she remained until she was married in December 1947. Mr. Cris E. Hey, a neighbor of Mr. and Mrs. Daggett when they lived at Northern Heights, testified that "just shortly" after plaintiff was taken into the Daggett home, Mr. Daggett said to him that "We are going to give her a home, and we intend to adopt her." He further testified that the Daggetts treated her "the same as though she was their own child" and "as though they were her parents," and that it was at plaintiff's birthday party when she was sixteen years of age that he first learned that her last name was McNeece.

During the time that plaintiff lived in the home of Mr. and Mrs. Daggett she went by and was known by the name of Rose Marie Daggett, and was enrolled in the public schools at Northern Heights and also in a parochial school in Kansas City under that name. On April 30, 1936, when plaintiff was ten years of age and had been living in the Daggett home about four years, she was baptized in the church of The Holy Cross in Kansas City under the name of Rose Marie Daggett, and was shown by the baptismal records to be the "child of Henry Daggett and Nellie Hinkle." (There is no explanation of the use of the name "Hinkle," but we speculate that it was the

maiden name of Mrs. Daggett). On May 29, 1940, plaintiff was graduated from St. Agnes Academy, Kansas City, Missouri, and the certificate of graduation was issued in the name of Rose Marie Daggett. However, in September, 1940, a policy of life insurance was issued in the name of "Rose Marie McNiece," and the application therefor was signed by "Nellie Daggett" who was the named beneficiary, and who was shown on the application and in the policy to be the "foster mother" of plaintiff. When plaintiff was married in December 1947, her name was shown on the certificate of marriage as "Rosalie McNeece." When one of plaintiff's children was born, Mrs. Daggett listed the child on a "family tree" and showed herself as the "foster grandmother" and Mr. Daggett as the "foster grandfather."

Witnesses testified to the effect that during the time plaintiff was in the home of Mr. and Mrs. Daggert, she was treated as their child and she helped with the housework. She referred to them as "mother" and "daddy." In 1945 the Daggetts moved to Arkansas, and plaintiff was taken with them. Plaintiff's natural father died in 1954. After her mother's death plaintiff heard from him only once and saw him only twice, once when she was nine and again when she was twenty-eight years of age. Letters from Mr. Daggett to plaintiff after she was married were signed "Dad" and letters from Mrs. Daggett were signed "Love, Mom." They were friendly and showed interest in the health and welfare of plaintiff.

▮ Adoption of children exists in this state solely as a creature of statute, and prior to 1917 the only statutory method of adoption was by deed which gave the adoptee certain rights of inheritance from the adopter. Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, certiorari denied 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585. In 1917 the Legislature withdrew the right of individuals to fix custody of minor children by deed or private contract or to adopt a child except by decree of the appropriate juvenile court. State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S.W.2d 742, 83 A.L.R. 1393. Therefore, any agreement or contract by one person to adopt a child, by operation of law, is subject to the applicable statutes pertaining to adoption. Even so, it has specifically been held that the present and prior statutory enactments pertaining to adoption "did not oust a court of equity of jurisdiction to decree an adoption in a proper case, where the facts warrant it, although the statutory methods of adoption were not complied with," Menees v. Cowgill, supra; Drake v. Drake, 328 Mo. 966, 43 S.W.2d 556, and "Where such contract is actually made and is based upon a good consideration and where it is fully performed by the person to be adopted but is not performed by the promisor during his lifetime, a court of equity will declare specific performance against the adopter's estate to the extent at least of making the adoptee an heir." Niehaus v. Madden, 348 Mo. 770, 155 S.W.2d 141; Lynn v. Hockaday, 162 Mo. 111, 61 S.W. 885, 85 Am.St.Rep. 480; Menees v. Cowgill, supra. We are of the opinion that the declaration of the adoptee as an heir is as far as a court of equity should ever go in enforcing a contract to adopt when the failure to perform includes the failure to obtain the authority of the juvenile court for the adoption. See the comment in "Equitable Adoption in Missouri," 20 Mo.L.Rev. 199, and the cases cited in the first footnote. Adoption pursuant to the judgment of a juvenile court now carries with it far greater consequences than an adoption by deed. See Wailes v. Curators of Central College, 363 Mo. 932, 254 S.W. 2d 645, 37 A.L.R.2d 326.

▮ The claimant, or person seeking the decree of equitable adoption, has the burden of proving the adoption contract, Capps v. Adamson, 362 Mo. 539, 242 S.W.2d 556; Westlake v. Westlake, Mo., 201 S.W. 2d 964; Taylor v. Hamrick, Mo., 134 S.W. 2d 52, and it has been said that the evidence must be examined with "special strictness," Hogane v. Ottersbach, Mo., 269 S.W.2d 9,

and that it must be so clear, cogent and convincing as to leave "no reasonable doubt" in the chancellor's mind. Hegger v. Kausler, Mo., 303 S.W.2d 81. See also Capps v. Adamson, supra; Rich v. Baer, 361 Mo. 1048, 238 S.W.2d 408; and the statement in Benjamin v. Cronan, 338 Mo. 1177, 93 S.W. 2d 975, 981, for the reason for the above rule. In our statement of the facts we have included some evidence which we conclude was improperly excluded. However, in this equity case it is our duty to consider the evidence de novo and to reach our own conclusions, and pursuant to Civil Rule 73.01, V.A.M.R., in doing this we shall consider all the evidence which we determine to be properly before us. Of course, when an issue of fact has been decided by the chancellor upon conflicting evidence, and such finding turns upon the testimony of witnesses who have appeared before him, such finding will be sustained unless clearly erroneous. Hegger v. Kausler, supra at p. 89.

In this case there was no actual adoption of plaintiff by Mr. and Mrs. Daggett in the manner then provided by statute, and the evidence clearly establishes that Mrs. Daggett and plaintiff fully appreciated that fact. However, under the theory of equitable adoption to obtain performance, in part as above mentioned, of a contract to adopt, knowledge on the part of Mrs. Daggett and plaintiff that no adoption had in fact been consummated merely supports the proof of the failure to perform the contract.

The trial court, in an opinion filed in this case, expressly found "that there is no evidence in the record to support an oral contract to adopt." We cannot agree with this conclusion when all the evidence which we believe was proper is considered together with the permissible inferences. Compare the factual situation in Lynn v. Hockaday, supra. The evidence here is clear that in 1936 Mr. and Mrs. Daggett wanted to adopt a little girl, and they expressed the desire to obtain custody of plaintiff, then six years of age, with the intention and purpose of taking her into their home and raising her as their daughter "if her father would consent" and to adopt her if her father "would sign the papers," or expressed another way, if he would consent. The only permissible inference is that plaintiff's father did consent. He was told of the "circumstances" which included the desires and intent of the Daggetts in respect to plaintiff, and after his reply was received, whatever it was, plaintiff's uncle and aunt, who had custody of plaintiff with her father's consent, delivered plaintiff to the Daggetts. In order to conclude that plaintiff's father did not consent to the transfer of her custody to the Daggetts with the intent and purpose that she be adopted, we must assume, without any support therefor, that plaintiff's uncle and aunt acted contrary to the wishes of her father after they had gone to the trouble to determine his wishes. In addition, after plaintiff was taken into the home of the Daggetts, her father, in effect, totally abandoned her to the Daggetts as evidenced by the fact that in the following twenty-two years he communicated with her once and saw her but twice. Apparently, he never communicated with the Daggetts. The intention of the Daggetts to do more for plaintiff than merely to receive her into their home and provide food, clothing and shelter in return for her companionship and services, is clearly evidenced by the fact that they changed both the first and last name used by plaintiff, and instead of being known as Rosealie McNeece who resided with the Daggetts, she used the name Rose Marie or Marie Daggett, and it was by this name that she was registered in school and church, and by which she was known in the community. Also, Mr. Daggett, immediately after receiving plaintiff into his home, announced to Mr. Hey his intention to adopt her. After plaintiff had been in the Daggett home about four years she was baptized using the name of Rose Marie Daggett, and on the baptismal records she was shown to be the child of Harry Daggett and Nellie Hinkle. It is not shown who arranged for this information to be shown on the records of the church, but it is inconceivable that it was permitted to be done by anyone other than

the Daggetts, and certainly not by a ten-year-old child. The record does not show the religious faith of plaintiff's father or family, but the Daggetts had plaintiff baptized in their faith which was different from that of her uncle and aunt. During the time that plaintiff was in the Daggett home, from the age of six years until she was married at age twenty-one, she was treated as one of the family, she performed the usual household work of a natural child, and she treated Mr. and Mrs. Daggett as a natural child would treat her parents and in return was treated by them as parents would treat a natural child.

Defendants made an offer of proof, rejected by the trial court, that a former wife of William Leland Daggett, divorced at the time of trial, would testify that "on many occasions" she had discussions with Mrs. Daggett "regarding the matter of the adoption of Rosalie McNeece by Mr. and Mrs. Daggett," and that Mrs. Daggett had told her "that they had not adopted the plaintiff" and that "they were glad they had not adopted her" because plaintiff had threatened to sue them "in recent years for wages or earnings which she contended she was entitled to for work she had done for Mr. and Mrs. Daggett while she lived in their home." This evidence was properly excluded, but since it was offered by the defendants, we feel a comment is not inappropriate. First, such evidence, if admitted, lends support to plaintiff's theory that there was an agreement to adopt her, and second, apparently after plaintiff left the home of Mr. and Mrs. Daggett she believed that the agreement to adopt her had not been carried out, and that she was entitled to some recourse.

On the other side of the picture, we find that Mr. and Mrs. Daggett, contrary to what we find was their announced intention, did not in fact adopt plaintiff in the manner prescribed by statute, and that both plaintiff and Mrs. Daggett recognized this fact; the plaintiff at the time of her marriage and Mrs. Daggett at the time she obtained the policy of life insurance. But as previously noted, this does not tend to establish that the agreement to do so was never entered into, but does constitute evidence that such an agreement, if in fact made, was not carried out.

Upon our consideration of all the evidence in this case, we are compelled to conclude that at the time Mr. and Mrs. Daggett accepted and took plaintiff into their home, they did so with the understanding and agreement that they would adopt plaintiff. This agreement was not carried out, but full performance on the part of plaintiff's father occurred, and there is no basis for concluding that during the time plaintiff was in the Daggett home there was not full performance on her part. However, for the reasons previously mentioned, we are of the opinion that adoption with all the incidents of an adoption ordered and approved by a juvenile court should not be decreed by a court of equity, but only that an equitable adoption be decreed to the extent that plaintiff becomes an heir of Mr. and Mrs. Daggett.

The judgment is reversed and the cause remanded for the entry of a judgment in accordance with the views here expressed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.