Gerald H. GOLDBERG, Director of Revenue, State of Missouri, Appellant,

v.

M. H. ROBERTSON, Executrix, Respondent.

In the ESTATE OF Ella Mae SHULL, Deceased.

No. 62253.

Supreme Court of Missouri, En Banc.

May 11, 1981.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

Joe W. Coleman, Lawrence J. Skidmore, Kansas City, for respondent.

WELLIVER, Judge.

The Director of Revenue appeals from a judgment of the probate division of the circuit court decreeing that Donna Luccia Furman's distributive share of the estate of Ella Mae Shull should be taxed at the rate of one percent pursuant to § 145.060.1(1), RSMo 1978, rather than at the rate of five percent as provided in § 145.060.1(5), RSMo 1978. In so holding, the court found that the phrase "legally adopted child" as used in § 145.060.1(1) embraced Donna Luccia Furman, who had been decreed to be equitably adopted in proceedings in the estate of Lee Vade Shull, pre-deceased husband of the deceased, Ella Mae Shull. The sole issue in this case is whether an equitably adopted child is a "legally adopted child" within the meaning of § 145.060.1(1), RSMo 1978. This Court has jurisdiction to hear this appeal, because it involves the construction of a revenue law of this state. Mo.Const. art. V, § 3. We reverse the judgment of the circuit court.

On October 30 or 31, 1944, Betty Titus gave birth to Donna Luccia Titus. Donna Luccia was placed in the care of Lee Vade Shull and Ella Mae Shull by her natural mother when she was approximately two months old. When Donna Luccia was approximately three years old, Mr. and Mrs. Shull attempted to adopt her. The adoption proceedings were never completed, because Betty Titus refused to relinquish her parental rights over Donna Luccia. Donna Luccia was never adopted by Mr. or Mrs. Shull in accordance with the statutes authorizing adoption in this state. However, Donna Luccia changed her surname from Titus to Shull and lived with Mr. and Mrs. Shull until her first marriage to Ronnie Anderson. Subsequently, she changed her surname from Anderson to Furman.

On November 13, 1974, Lee Vade Shull died. On January 26, 1979, the probate division of the circuit court in an adversary proceeding, decreed that Donna Luccia Furman was the equitably adopted child of Lee Vade Shull.

On February 4, 1978, Ella Mae Shull died. Prior to her death she executed a will naming Mrs. Furman a devisee and legatee of certain property. On February 14, 1979, a second amended application for letters testamentary was filed listing Mrs. Furman as the daughter of Mrs. Shull. On January 7, 1980, a corrected appraiser's report was filed wherein the inheritance tax was calculated against Mrs. Furman as if she were the daughter of Mrs. Shull, and the circuit court assessed the tax due in accordance with the appraiser's report. The Director of Revenue filed exceptions to the appraiser's report, objecting to Mrs. Furman being treated as Mrs. Shull's daughter on the basis of an equitable adoption. By stipulation, the parties agree that Mrs. Furman is the equitably adopted child of Ella Mae Shull, and that the sole legal issue in this case is whether an equitably adopted child is a "legally adopted child" within the meaning of § 145.060.1(1), RSMo 1978.

In *In the Matter of Estate of Van Cleave*, 610 S.W.2d 620, 621 (Mo. banc 1981), we expressly reserved for future determination the issue now before us. Section 145.060.-1(1), RSMo 1978,[1] states:

1. When property, or any beneficial interest therein or income therefrom passes by any such transfer where the amount of property, interest or income shall exceed in value the exemption herein specified and shall not exceed in value twenty thousand dollars, the tax hereby imposed shall be as follows:

(1) One percent. Where the person or persons to whom such property or any beneficial interest therein passes, shall be the husband, wife, lineal descendant, or any lineal ancestor of the decedent, or any *legally adopted child* or any lineal descendant of such adopted child, or child born out of lawful wedlock, at the rate of one percent of the clear market value of such property or interest therein; ...

(Emphasis added.) In order to ascertain whether an equitably adopted child is a "legally adopted child" as those words were intended to be used by the General Assembly, we must first examine the historical development and nature of equitable adoption in this state.

Although adoption was known to many of the ancient peoples of the world, see *Hockaday v. Lynn*, 200 Mo. 456, 461–64, 98 S.W. 585, 585–86 (1906), adoption was not a part of the English common law at the time Missouri, by statute, made the common law of England a part of Missouri law. *In re Novak*, 536 S.W.2d 33, 35 (Mo. banc 1976); *Menees v. Cowgill*, 359 Mo. 697, 705, 223 S.W.2d 412, 415 (1949), *cert. denied*, 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950); *Niehaus v. Madden*, 348 Mo. 770, 777, 155 S.W.2d 141, 144 (1941); *Hockaday v. Lynn*, 200 Mo. 456, 461, 98 S.W. 585, 585 (1906); *State ex rel. Bolshaw v. Montgomery*, 237 Mo.App. 678, 683, 146 S.W.2d 129, 131 (1940). *See* § 1.010, RSMo 1978. Adoption is purely a creature of statute in Missouri. *Long v. Willey*, 391 S.W.2d 301, 304 (Mo. 1965); *Menees v. Cowgill*, 359 Mo. 697, 705, 223 S.W.2d 412, 415–16 (1949), *cert. denied*, 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950); *Niehaus v. Madden*, 348 Mo. 770, 777, 155 S.W.2d 141, 144 (1941). *See* ch. 453, RSMo 1978. The first Missouri statute authorizing adoption was enacted in 1857. Laws of Mo.1857, p. 59. That statute authorized the adoption of children by deed. *Drake v. Drake*, 328 Mo. 966, 971, 43 S.W.2d 556, 558 (banc 1931). In 1917, the Forty-ninth General Assembly abolished the right to adopt children by deed or private agreement and vested exclusive jurisdiction over the adoption of children in the juvenile division of the circuit court. S.B. 313, Laws of Mo.1917, p. 193. *See Long v. Willey*, 391 S.W.2d 301, 304 (Mo.1965). It is of special

---

1. S.B. 539, Laws of Mo.1980, pp. 303–08, effective 1/1/81, repealed the inheritance tax contained in ch. 145, RSMo 1978, and replaced it with an estate tax as provided for in ch. 145, RSMo Cum.Supp.1980.

significance in this case that the same General Assembly that restricted the availability of adoptions by granting the juvenile court exclusive jurisdiction over adoption cases through S.B. 313, also created the inheritance tax section which is here in question by passage of C.S.H.B. 638, Laws of Mo.1917, p. 114. In section 3 of this new inheritance tax law, the Forty-ninth General Assembly provided that a "legally adopted child" of the decedent would be taxed at the rate of one percent on his or her inheritance.

It has been held by this Court that the enactment of adoption statutes by the General Assembly did not oust a court of equity from its jurisdiction to declare the existence of an equitable adoption. *Drake v. Drake,* 328 Mo. 966, 972, 43 S.W.2d 556, 559 (banc 1931). The theoretical underpinnings of the equitable adoption doctrine are, alternatively, the specific performance of a contract to adopt or an equitable estoppel to deny that an adoption agreed to has been made. *In the Matter of the Estate of Van Cleave,* 610 S.W.2d 620, 622 (Mo. banc 1981); *Menees v. Cowgill,* 359 Mo. 697, 706, 223 S.W.2d 412, 416 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950); *Mize v. Sims,* 516 S.W.2d 561, 564 (Mo.App.1974). In *Thompson v. Moseley,* 344 Mo. 240, 125 S.W.2d 860 (1939), this Court stated that the basis of the equitable adoption doctrine:

> has been recognized to be that it is so inequitable and unjust to allow one to fail to comply with an agreement made with the parent or custodian of a child to adopt it, when he has taken the child at such an age that it had no will or choice of its own in the matter, that, after the child has performed everything contemplated by the relation provided for, the intended adoptive parent or his heirs will be estopped to deny an adoption.

344 Mo. at 245, 125 S.W.2d at 862.

 Consistent with this justification for the existence of equitable adoptions, this Court has carefully circumscribed the breadth of the equitable adoption doctrine. Equitable adoptions are to be declared "only where justice, equity and good faith

require it." *Hogane v. Otterbach,* 269 S.W.2d 9, 11 (Mo.1954); *Rich v. Baer,* 361 Mo. 1048, 1056, 238 S.W.2d 408, 411 (1951). The proponent of an equitable adoption has the "burden of producing evidence so clear, cogent and convincing as to leave no reasonable doubt in the chancellor's mind." *In the Matter of Van Cleave,* 610 S.W.2d 620, 622 (Mo. banc 1981). *See Hogane v. Otterbach,* 269 S.W.2d 9, 11 (Mo.1954), *Rich v. Baer,* 361 Mo. 1048, 1056, 238 S.W.2d 408, 411 (1951); *Keller v. Lewis County,* 345 Mo. 536, 542, 134 S.W.2d 48, 51 (1939). There can be no equitable adoption of a person who is an adult at the time the agreement to adopt is entered into. *Thompson v. Mosely,* 344 Mo. 240, 245, 125 S.W.2d 860, 862 (1939). An equitably adopted child is not an heir of the collateral kin of the equitably adopted parent. *Menees v. Cowgill,* 359 Mo. 697, 707–08, 223 S.W.2d 412, 418 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950). This Court has stated that:

> the declaration of the adoptee as an heir is as far as a court of equity should ever go in enforcing a contract to adopt when the failure to perform includes the failure to obtain the authority of the juvenile court for the adoption.

*Long v. Willey,* 391 S.W.2d 301, 304 (Mo. 1956). *See State ex rel. Bolshaw v. Montgomery,* 237 Mo.App. 678, 683, 146 S.W.2d 129, 132 (1940).

This Court also has stated in discussing the effect of the *Menees* case that:

> a legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them, ...

*Rumans v. Lighthizer,* 363 Mo. 125, 131, 249 S.W.2d 397, 401 (1952). In *Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950), the plaintiff brought an action for an equitable adoption against the collateral heirs of Mr. Cowgill's sister. It was admitted that long prior to Mr. Cow-

gill's death, plaintiff had a cause of action in equity against Mr. Cowgill for the specific performance of a contract to adopt. However, this Court held that the plaintiff was not entitled to a decree of equitable adoption "as against the collateral kin of ... [Mr. Cowgill's] sister, who were not parties to the adoption contract and who are not bound thereby." 359 Mo. at 708, 223 S.W.2d at 418. This Court explained this result in the following manner:

If Guy M. Cowgill had legally adopted appellant in compliance with statutory requirements, the adoption would have been binding on all persons, including the respondents, but in an equitable proceeding based upon contract, only the parties thereto, or those in privity with them are bound. Equity acts only against specific individuals and, in such case, one person may be bound and not another. A decree of equitable adoption merely forecloses 'the parties to the suit against a denial of the status that the court declares' and the status decreed exists only in equity and against the judgment defendants. As between appellant and the respondents, appellant was not, in either law or equity, the adopted child of Guy M. Cowgill by reason of his contract to adopt her and the facts and circumstances admitted.

359 Mo. at 708, 223 S.W.2d at 418.

■ Respondent cites the cases of *Estate of Reid*, 80 Cal.App.3d 185, 145 Cal.Rptr. 451 (3d Dist. 1978) and *Estate of Radovich*, 48 Cal.2d 116, 308 P.2d 14 (1957) for the proposition that an equitably adopted child should be given all the inheritance tax advantages of a legally adopted child. It is clear in California that an "equitable" adoption that is decreed by their probate courts is deemed to be an action *in rem*. This has never been the case in Missouri. The *Menees* case makes it clear that a *legal adoption* in this state is an action *in rem*, binding on the whole world and entitling the adoptee to all the statutory rights tied to the status of legal adoption, see, *e. g.*, § 453.090, RSMo 1978, but that an *equitable adoption* is an *in personam* action, binding only on the parties to the action and those in privity with them.

■ On April 10, 1917, the General Assembly approved S.B. 313, Laws of Mo.1917, p. 193, which granted the juvenile division of the circuit court the exclusive power to grant adoptions. On April 12, 1917, two days after the new adoption statute was approved, the General Assembly approved C.S.H.B. 638, Laws of Mo.1917, p. 114, which provided in section 3 that a distributee of a decedent's estate who was the "legally adopted child" would be taxed at the rate of one percent. The distinction between a legal and equitable adoption and the fact that the Forty-ninth General Assembly was considering a bill providing for the adoption of children at the same time it considered the inheritance tax, make it clear that when the legislature used the words "legally adopted child" it referred only to children adopted in conformity with the statutes of this state. We hold that an equitably adopted child is not a "legally adopted child" within the meaning of § 145.060.1(1), RSMo 1978. *See Johnston v. Calvert*, 157 Tex. 590, 305 S.W.2d 778 (1957); *Wooster v. Iowa State Tax Commission*, 230 Iowa 797, 803, 298 N.W. 922, 925 (1941) and cases cited therein.

The judgment is reversed.

All concur.