William A. ENGEL and Dylan James Engel, a Minor, by his Next Friend, William A. Engel, Respondent,

v.

Michelle A. KENNER, a/k/a Michelle A. Robbins, Appellant.

No. 68585.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 18, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1996.

Mary Ann Weems, Richard J. Eisen, Corrine R. Coston, Law Offices of Mary Ann Weems, Clayton, for appellant.

Justin C. Cordonnier, Michelle S. House, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, for respondent.

SIMON, Judge.

Michelle Kenner, mother, appeals the grant of a judgment entered in a declaratory judgment action seeking an order of equitable adoption of her minor son, Dylan, in favor of William Engel (Engel), individually, and as next friend for Dylan.

On appeal, mother contends that the trial court erred in: (1) declaring Dylan to be the equitably adopted child of Engel and in awarding custody to Engel; (2) awarding custody because the judgment granted relief greater than that sought in the petition; and (3) in awarding custody because mother did not receive notice that Engel was seeking custody. We reverse.

Our review is governed by the well-known principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). For a period of time in 1989, Engel lived with mother, and was living with her during the time that Dylan was born on July 30, 1990. During her pregnancy, mother advised Engel that there was a possibility that Dylan was not his. However, at the hospital the birth certificate was filled out showing Engel as the father of Dylan. She now contends that child's biological father is a man known only to her as "Stardust." His whereabouts are unknown. Through 1992, she held out to the public that Engel was child's natural father.

She and Engel continued to live together for approximately five months after child's birth. During those five months, and for a period of approximately three years thereafter, Engel provided support for Dylan, including food, clothing, medical bills and other supplies. Engel did not directly pay child support for Dylan to mother.

Engel filed a petition to determine the existence of a parent-child relationship and for joint custody seeking a declaration of paternity. In 1992, the petition was denied after blood tests established Engel's non-paternity. Neither the petition, nor the order are part of the record on appeal. However, Engel admits that he is not Dylan's biological father.

After the blood tests came back negative, mother continued to allow Engel to spend time with Dylan, although not as much as before. Eventually, she did not allow Engel to have any visitation with Dylan.

In November, 1992, Engel filed a petition for declaratory judgment seeking an order of equitable adoption, alleging *inter alia*, that: (1) since the birth of Dylan, mother held Engel out as the natural father; (2) Dylan's birth certificate lists Engel as his natural father; (3) at the time of the filing of the petition, Dylan was in the physical custody of Engel; (4) Engel had primary physical custody of Dylan for approximately two years; (5) Engel had paid all expenses for Dylan; (6) Engel, based upon mother's assertion that he was Dylan's father, had considered him as his own and therefore provided him with love and affection; (7) Dylan considered Engel to be his natural father; and (8) it was in Dylan's best interest to be declared the equitably adopted child of Engel. The petition prayed that the court enter a declaratory judgment finding Dylan to be the equitably adopted son of Engel.

The theoretical underpinnings of the equitable adoption doctrine are, alternatively, the specific performance of a contract to adopt or an equitable estoppel to deny that an adoption agreed to has been made. *See In re Estate of Van Cleave*, 610 S.W.2d 620, 622 (Mo.1981). Here, Engel relied upon the latter theory. However, the petition did not contain any request relating to the custody of Dylan.

Mother filed a motion to dismiss alleging that the previous declaration of non-paternity was res adjudicata to the present action, which was denied. Next, a guardian ad litem was appointed to represent Dylan.

Prior to the hearing, mother's counsel withdrew. At trial, she proceeded *pro se*. The parties presented evidence concerning Engel's employment as a chef and his current residency with his mother and sister. The evidence also indicated that mother was presently unemployed, receiving welfare payments, and living with her boyfriend and his children, and she moved several times in the five years preceding the hearing.

The evidence further revealed that mother and her boyfriend admitted to disciplining Dylan by spanking him, but both denied any physical abuse. However, Engel's mother testified that on one occasion, she saw mother "slam" Dylan against the wall because he failed to pick up some poker chips that he had been playing with. Testimony was elicited that mother sought drug and alcohol treatment in 1987, and was hospitalized for a suicide attempt in 1988. At trial, she was no longer under medical treatment.

It is clear from the record that at the time of the hearing, neither mother, nor the trial court understood that Engel was seeking custody of Dylan. When Engel introduced evidence regarding the best interest of the child, the following occurred:

[MOTHER] I object.

[THE COURT] What's your objection?

[MOTHER] I don't see what that has to do with my son.

[THE COURT] What does that have to do with these proceedings?

[ENGEL'S COUNSEL] It has to do with the whole nature of the environment the child is residing in and has resided in since he's not been—

[MOTHER] Dylan was never exposed to any of that.

[THE COURT] Just a minute, [mother]. Are you asking—if I sustain the equitable adoption, are you going to be asking for a specific order of temporary custody?

[ENGEL'S COUNSEL] I'm going to be asking for a specific order of primary custody.

Upon conclusion of the trial, the trial court, while admitting that its action was "unorthodox," ruled that Engel was the adoptive father of Dylan and transferred primary physical custody to him.

On the same day, the trial court entered its findings of fact and conclusions of law that had been prepared by Engel. The trial court found, *inter alia:* (1) the Uniform Parentage Act, §§ 210.817 to 210.852 RSMo.1994 (all references shall be to RSMo.1994 unless otherwise indicated), does not address the standards by which custody is determined; (2) the custody of children section, § 452.375, of the Dissolution of Marriage chapter, the jurisdiction section, § 452.450, of the Uniform Child Custody Jurisdiction Act, and "constitutional principles" in which "an illegitimate child is to be afforded the same rights afforded legitimate children," guided its determination of the proper custody of child; (3) that it had to consider the best interests of the child when determining custody; and (4) it had jurisdiction over the child pursuant to § 452.450 and it had a duty to determine the custody of Dylan. In its judgment and order, the trial court entered a "Declaratory Judgment and Order of Equitable Adoption:" (1) declaring Engel to be the adoptive father of Dylan; (2) awarding primary care, custody and control of Dylan to Engel; and (3) awarding mother temporary physical custody on alternate weekends and holidays, and for six weeks each summer. The trial court did not mention legal custody of Dylan. Further, the trial court did not terminate mother's or the biological father's parental rights.

On appeal, mother was represented by counsel. In her first point, she contends that the trial court erred in declaring Dylan to be the equitably adopted son of Engel and in awarding custody because "Missouri law does not allow a child to be removed from the care of his or her natural parents through application of the doctrine of equitable adoption." Engel contends that the "fact that the principle of equitable adoption has not been used for anything other than property rights in Missouri does not mean that it cannot be."

■ Although adoption was known to many of the ancient peoples of the world, adoption was not part of the English common law at the time Missouri, by statute, made the common law of England a part of Missouri law. *Goldberg v. Robertson,* 615 S.W.2d 59, 61 (Mo.banc 1981). In Missouri, adoption is purely a creature of statute. *Id.* The first Missouri statute authorizing adoption was enacted in 1857. *Id.;* Laws of Mo.1857, p. 59. That statute authorized the adoption of children by deed. *Drake v. Drake,* 328 Mo. 966, 43 S.W.2d 556, 558 (banc 1931). In 1917, the Forty-ninth General Assembly abolished the right to adopt children by deed and vested exclusive jurisdiction over the adoption of children in the juvenile division of the circuit court. S.B. 313, Laws of Mo.1917, p. 193; *see Long v. Willey,* 391 S.W.2d 301, 304 (Mo.1965). The juvenile court has exclusive jurisdiction of the adoption of children. *See* § 211.031.1(4); *State ex rel. Buerk v. Calhoun,* 330 Mo. 1172, 52 S.W.2d 742, 743 (1932).

However, in the property law area, the enactment of adoption statutes did not oust a court of equity of its jurisdiction to declare the existence of an equitable adoption in a property situation. *Drake,* 43 S.W.2d at 559 (plaintiff sought to be declared the equitably adopted son of decedent to inherit real estate).

Prior to the enactment of the 1917 statute which abolished adoptions by deed and vested exclusive jurisdiction of adoptions within the juvenile court, equitable adoption was not

a proper means to transfer custody, specifically:

> ... so far as the contract to adopt may involve a change of custody and control, the admission of the child to the family of the promisor and any other matters not involving questions of property, the contract cannot be specifically enforced.

Eldon R. James, *Some Aspects of the Status of Children in Missouri*, 10 M.B.L. 30 (1916).

The parties have not referred us to, nor are we able to locate, any case where equitable adoption has been used to effect custody of a child. In *Beach v. Bryan*, 155 Mo.App. 33, 133 S.W. 635, 640 (1911), we stated:

> ... courts of equity deal with property rights alone, are concerned with questions which affect property, and exercise no jurisdiction in matters of wrong to the person. Bispham's Principles of Equity (6th Ed.) top page 57. They are concerned only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which their jurisdiction rests.

■ In *Long*, our Supreme Court found that an equitable adoption would be decreed and child would be able to inherit from equitably adoptive parents, where the child and its natural parents had fully performed under the adoption agreement, although the adoptive parents failed to formally adopt child. *Long*, 391 S.W.2d at 304. Our Supreme Court stated:

> ... the declaration of the adoptee as an heir is as far as a court of equity should ever go in enforcing a contract to adopt when the failure to perform includes the failure to obtain the authority of the juvenile court for the adoption.

*Id.* An equitable adoption does not confer all of the "incidents of an adoption ordered and approved by the juvenile court," and the enforcement in equity of the agreement to adopt may not confer additional rights upon the adoptive parent. *Id.* at 306[12,13].

Here, the trial court declared Engel to be the adoptive father of Dylan and awarded him primary care, custody and control. The pleadings clearly indicate that Engel did not institute this action to protect a property right, such as to have Dylan declared his heir. Instead, he sought and was erroneously awarded the adoption and custody of Dylan.

■ The trial court found that Engel has standing because the Uniform Child Custody Jurisdiction Act, § 452.445 *et seq.*, declares that if a court determines that it is in "the best interest of the child," then that court may assume jurisdiction to determine custody. *See* § 452.450.1(4). However, this standard does not "refer to a choice of a parent, but to a choice of a forum." *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 278[6] (Mo.App.1987). This section is a procedural statute only. It does not create any substantive rights for any party. It merely dictates the forum where custody disputes must be heard and it does not authorize consideration of the relative fitness of the parents in order to determine custody. *Id.* Rather, custody is a substantive matter to be determined after jurisdiction to hear the case is established. *Id.* Further, the trial court found that its decision was "guided" by the Dissolution of Marriage chapter, specifically § 452.375. However, third-party adoption is not available because this action did not arise out of the dissolution of marriage.

■ Here, in an action sounding in equitable adoption, the trial court, without proceeding pursuant to the exclusive statutory procedure, § 211.011 *et. seq.*, and upon its finding that it was in the best interests of the child, erroneously declared and applied the law in declaring Engel to be the adoptive father of Dylan and awarding him primary care, custody and control. Clearly, the trial court was without jurisdiction to do so.

As a result of our disposition of point one, we shall not address mother's remaining points.

JUDGMENT REVERSED.

AHRENS, P.J., and PUDLOWSKI, J., concur.